IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No.: 21-cr-40-2 (TNM) |
| TRISTAN STEVENS, | |
| Defendant. | |

**MOTION IN LIMINE TO PRECLUDE CLAIM OF SELF-DEFENSE**

The United States of America respectfully moves in limine to preclude the defendant from raising a claim of self-defense. The available facts, as a matter of law, do not support a claim of self-defense because they show that the defendant was the initial aggressor, attacking a police line that had only been established because the police had been forced to fall back due to the actions of the mob. In the alternative, the government requests that the defendant provide a pre-trial proffer of facts to allow the parties to argue, and the Court to decide, whether the defendant is entitled as a matter of law to assert self-defense.

## INTRODUCTION

Defendant Stevens is charged with four counts of assaulting, resisting or impeding a federal officer. In Counts 14, 16, and 33 of the indictment, Stevens is charged with assaulting, resisting, or impeding a federal officer and aiding and abetting, in violation of 18 U.S.C. § 111(a)(1) and 2. In Count 21 of the indictment, Stevens is charged with assaulting, resisting, or impeding a federal officer with a deadly or dangerous weapon, that is, a shield, in violation of 18 U.S.C. § 111(a)(1) and (b).

To meet its burden of proof at trial, the government will seek to admit video evidence showing the defendant committing several separate instances of assaultive conduct, when he joined

the mob that overwhelmed law enforcement on the West Front of the U.S. Capitol and forced their way into the "tunnel" created by the structures present on the Lower West Terrace. Specifically, at approximately 2:49 p.m., Stevens joined with other rioters in the tunnel, appearing to give commands to fellow rioters in the tunnel, throwing his body on the backs of other rioters, and pushing in a concerted effort against the police line guarding the entrance to the Capitol building at the back of the tunnel. (Count 14). When that push was unsuccessful, Stevens briefly left the tunnel. At approximately 2:56 p.m., Stevens then made his way back into the tunnel with additional rioters and once again pushing as part of a crowd against the line of law enforcement guarding the Capitol building doors. (Count 16). Around 3:06 p.m., Stevens grabbed one of the stolen shields being passed around by the other rioters and pushed his way to the front of the police line. At approximately 3:07 p.m., as other rioters yell "form a riot shield," Stevens used the shield to push up against law enforcement officers, including repeatedly hitting U.S. Capitol Police Sergeant Aquilino Gonell in the face. (Count 21). Stevens tried to grab a baton thrust at him, but was unable to do so. This attack was caught on video by journalist Jon Farina and was posted to YouTube.



Finally, between 4:15 p.m. and 4:19 p.m., Stevens returned with additional rioters to the tunnel, and once again began pushing as part of a crowd against the line of law enforcement

guarding the Lower West Terrace doors. (Count 33). They push in unison against the officers for a while and then begin to retreat. The evidence shows that the defendant attacked the police line and Sergeant Gonell without provocation.

## ARGUMENT

Section 111 makes it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with" a federal officer in the performance of the officer's duties. 18 U.S.C. § 111(a)(1). A defendant charged under Section 111 may assert, as an affirmative defense, a theory of self-defense, "which justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger." *United States v. Middleton*, 690 F.2d 820, 826 (11th Cir. 1982).

"A defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself." *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018) (internal quotation marks and citation omitted). That principle applies fully to Section 111 prosecutions. *See, e.g.*, *United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019) ("Mumuni was the initial aggressor in the altercation with Agent Coughlin; as such, he could not, as a matter of law, have been acting in self-defense."); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012) ("[A]n individual who is the attacker cannot make out a claim of self-defense as a justification for an assault.").

The proffered video evidence demonstrates that the defendant was the initial aggressor in each of the charged assaults in this case. At no point before the assaults did either Sergeant Gonnell nor any other officer from the police line apply force to the defendant. Indeed, the video evidence shows that another officer, not Sergeant Gonnell, made only incidental and non-forceable contact with Stevens while attempting to swat him away with a baton, as Stevens forced his shield into

3

Sergeant Gonnell. Any contact made by officers attempting to push back the crowd were incidental contacts with the defendant when trying to keep order. Crowd control measures, like use of OC spray, batons, and shields, were not provocation, but defensive responses to stop the mob from entering the U.S Capitol building. It was the defendant who then initiated a violent physical attack by using the stolen riot shield to attack the officers. He therefore cannot, as a matter of law, seek acquittal on the Section 111 charge by asserting self-defense.

Other circumstances depicted in the videos do not bear on the elements of self-defense. Defendant may have objected to law enforcement's presence at the U.S. Capitol, their effort to detain other individuals at the scene, or their directives that he move from his position and leave the area. None of that matters. *See United States v. Urena*, 659 F.3d 903, 907 (9th Cir. 2011) (observing that "harsh words from another, insulting words, demeaning words, or even fighting words" does not provide license to "stab the offending speaker in the neck, bash their skull with a baseball bat, send a bullet to their heart, or otherwise deploy deadly force in response to the insult"). Because the defendant "was the attacker" in this case, *ibid.*, he cannot advance a self-defense theory.

## CONCLUSION

For these reasons, the United States respectfully moves the Court to preclude the defendant from raising a claim of self-defense or, in the alternative, require the defendant to make a pre-trial proffer of facts that would permit the Court to decide whether he is entitled as a matter of law to assert self-defense.

Dated June 3, 2022.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY: ___/s/___
KIMBERLY L. PASCHALL
D.C. Bar No. 1015665
ASHLEY AKERS
Missouri Bar No. 69601
JOCELYN BOND
D.C. Bar No. 1008904
Assistant United States Attorneys
Capitol Siege Section
601 D Street, N.W.,
Washington, D.C. 20530
202-252-2650
Kimberly.Paschall@usdoj.gov