# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                               Case No. 21-cr-40-TNM-2

**TRISTAN CHANDLER STEVENS,**

    **Defendant.**

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

The defendant, TRISTAN CHANDLER STEVENS, by and through his undersigned attorney, respectfully submits the following memorandum for the Court's consideration at sentencing.

### I.  Sentencing Guidelines

The PSR separates Mr. Stevens' convictions for violating 18 U.S.C. § 111(a) (Counts 14, 16, 21, and 33) into four separate groups.[1] PSR ¶ 74. For each group, the PSR calculates the offense level at 14 under U.S.S.G. § 2A2.2 by finding that the offense conduct constituted aggravated assault. PSR ¶s 76, 83, 90, 97. Six levels are added under U.S.S.G. § 3A1.2 because the victims in this case were law enforcement officers, and the offense was motivated by such status, leaving each group with a total offense level of 20. PSR ¶s 78, 85, 92, 99. Four levels are added to account for the four equally serious

---

[1] The PSR determined that Mr. Stevens' additional convictions (Counts 35, 36, and 44) grouped with Counts 14, 16, 21, and 33. PSR ¶ 73.

groups for a total offense level of 24. PSR ¶ 103. In criminal history category I, the PSR lists Mr. Stevens' guideline range as 51 to 63 months' imprisonment. PSR ¶ 154.

### a. U.S.S.G. § 2A2.4 applies because Mr. Stevens' conduct did not constitute aggravated assault.

The decision to calculate Mr. Stevens' guidelines under § 2A2.2 or § 2A2.4 does not turn on the fact that this Court enhanced Mr. Stevens' convictions for violating § 111(a)(1) from a misdemeanor to a felony by finding that at the same time he violated § 111(a)(1) he also obstructed officers as part of a civil disorder. Instead of a technical application of the *Blockburger* standard used at trial, the guidelines direct the Court to determine the base offense level, specific offense characteristics, cross references, and adjustments based on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a).

Mr. Stevens' convictions for violating § 111(a)(1) and § 231(a)(3) are both based on his conduct of repeatedly pushing against the officers in the tunnel. PSR ¶s 42-46. At trial, this Court found that this specific conduct satisfied each element of § 111(a)[2]

---

[2] A violation of § 111(a) requires the government to prove the following four elements:
(1) the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with officers;
(2) the defendant did such acts forcibly;
(3) the defendant did such acts intentionally; and
(4) the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his official duties. ECF No. 422 at 9.

as well as the first and part of the second element of § 231(a)(3).[3] The additional requirements to prove a violation of § 231(a)(3) – that the acts were committed incident to and during a civil disorder that affected commerce – satisfy the *Blockburger* test but do not require any additional intent on Mr. Stevens' part and thus cannot transform his conduct into an aggravated assault under the guidelines. *See* U.S.S.G. § 2A2.2 cmt. n. 1. Mr. Stevens' offense level should be calculated using § 2A2.4(a) and (b) because he did not intend to commit any additional felonious conduct other than which underlies his § 111(a)(1) convictions.

Typical application of the cross-reference at U.S.S.G. § 2A2.4(c) – where the defendant is convicted of violating 18 U.S.C. § 111 and the offense conduct constituted aggravated assault because it involved the intent to commit another felony – involves additional felonious conduct separate and distinct from the violation of § 111. *See United States v. Thompson*, 60 F.3d 514, 518 (8th Cir. 1995) (defendant was convicted under § 111, and his conduct involved the intent to commit state law robbery); *United States v. Rue*, 988 F.2d 94, 97(10th Cir. 1993) (defendant was convicted under § 111, and his

---

[3] Similarly, a violation of § 231(a)(3) requires the government to prove the following three elements:
(1) the defendant knowingly committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers;
(2) at the time of the defendant's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder; and
(3) the civil disorder in any way or degree obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. *Id.* at 14.

conduct involved the intent to commit possession of paraphernalia and a controlled substance); *United States v. Robles*, 557 F. App'x 355, 356-59 (5th Cir. 2014) (defendant was convicted under § 111 for "physically charg[ing]" at a border patrol agent, and his conduct involved the intent to commit the uncharged state law felony of evading arrest because just before assaulting the border patrol agent he attempted to flee from state police officers into Mexico); *United States v. Ranaldson*, 386 F. App'x 419, 429 (4th Cir. 2010) (defendant was convicted under § 111 for assaulting one officer, and his conduct involved the intent to disarm a separate officer).

The undersigned acknowledges that judges in this district have applied the cross-reference in § 2A2.4(c) by finding that simultaneous violations of § 111(a)(1) and § 231(a)(3) constituted aggravated assault in January 6 cases where the guidelines were agreed upon by the parties as part of a plea agreement. *See United States v. Mark Leffingwell*, 21-cr-5(ABJ); *United States v. Kevin Creek*, 21-cr-645 (DLF); *United States v. Cody Mattice et al.*, 21-cr-622(BAH); *United States v. Willden*, 21-cr-423(RC). This Court also applied the cross-reference without objection or briefing in the case of *United States v. Matthew Council*, 21-cr-207.

There are at least two January 6 cases, however, where the issue has been fully briefed and argued: *United States v. Thomas Patrick Hamner*, 21-cr-689 (ABJ) and *United States v. Troy Sargent*, 21-cr-258 (TFH). In *Hamner*, Judge Jackson declined to apply the cross-reference at U.S.S.G. § 2A2.4(c) where the defendant pled guilty to violating §

4

231(a)(3) but was alleged to have simultaneously violated both § 231(a)(3) and § 111(a).

Judge Jackson reasoned:

> It strikes me that if the Commission is asking: Did you commit the assault with the intent to commit some other offense? it didn't mean with the intent to commit that exact same assault, just charged differently. They could have easily defined "another offense" as any offense with any different elements that's a different offense, but they didn't.
>
> It's also important to note that the cross reference says you go to aggravated assault if the assault on the police officer involved the intent to commit another felony, not the same intent needed to satisfy the elements of another felony, not that it was committed during the commission of another felony. This suggests that the guideline is meant to cover just the situation in the cases that you cited, where the assault on the police officer is intended to facilitate or further or advance or succeed in the commission of or evasion of apprehension for a second, different crime.

*Hamner,* 21-cr-689, sentencing transcript at 20-21.  Finding that "at best, the cross reference [at § 2A2.4(c)] is ambiguous," Judge Jackson determined that "the Rule of Lenity requires the adoption of the definition that favors the defendant." *Id.* at 24.

In *Sargent*, Judge Hogan came to the opposite conclusion, but he did so by finding that the defendant harbored an additional intent beyond that required to violate § 231(a)(3):

> It seems to me that he did have the intent to commit a separate offense, felony, and that is interfering with the process of Congress approving the Electoral College vote, and engaged in civil unrest to do that. It seems to me that had to be part of his operation at that time.
>
> So I am going to rule against the Defendant for those reasons in that he attempted felonious assault, an aggravated assault, in an attempt to commit another felony. And that is a civil disorder offense.

*Sargent*, 21-cr-258, sentencing transcript at 30.

Mr. Stevens' offense conduct shows only an intent to violate § 111(a): this Court found him not guilty of Count 34 – attempted obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) – because the government's evidence failed to prove Mr. Stevens intended to stop Congress' certification of the Electoral College vote. Consistent with its verdict, this Court should conclude that Mr. Stevens' offense conduct did not constitute aggravated assault and decline to apply § 2A2.2.

### b. Grouping

The parties agree, albeit for slightly different reasons, that Mr. Stevens' counts of conviction should be properly divided into two groups: Counts 14, 16, 33, and 35 in one group; and Counts 21, 36, and 44 in the other. ECF No. 530 at 9-10; ECF No. 532 at 3-4. From Mr. Stevens' perspective, Counts 14, 16, 33, and 35 should group under U.S.S.G. § 3D1.2(b) because the offense conduct in this case encompassed a single criminal episode, with the acts constituting each conviction connected by a "common criminal objective." PSR ¶ 74; U.S.S.G. § 3D1.2(b). The victims of Counts 14, 16, 33, and 35 are the group of officers in the tunnel, and while Mr. Stevens' conduct in Counts 14, 16, 33, and 35 generally harmed that group of officers, there is no distinct harm associated with each count.

### c. U.S.S.G. § 2A2.2(b)(3) – injury

Sergeant Gonell's head being pushed in an awkward manner and feeling a burning sensation on his face from the chemical irritant in the air does not constitute "bodily injury" under the guidelines. U.S.S.G. § 1B1.1 cmt. n. 1(B) ("'Bodily injury' means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought"). The government's request exaggerates Sergeant Gonell's testimony and plainly contradicts this Court's finding as the trier of fact that "Sergeant Gonell's injuries seem to have come from other rioters, not Mr. Stevens." Transcript of Court's 9/13/22 oral ruling at 30.

### d. U.S.S.G. § 3A1.3 – physical restraint

Again, the government's request for an upward adjustment to Mr. Stevens' guidelines based on physical restraint misstates the evidence adduced at trial and plainly contradicts this Court's finding as the trier of fact that:

> Sergeant Gonell was not being crushed between Mr. Stevens' shield and a fixed object . . . . The video evidence shows an officer clearly pushing into Sergeant Gonell's back to support him against the opposing line. That officer could have relented and given Sergeant Gonell escape space had he been in danger of serious injury.

*Id.* at 31-31.

## II. The 18 U.S.C. § 3553(a) factors

### a. Personal history and characteristics

Mr. Stevens began working on a Bachelor of Science in Computer Engineering at the University of West Florida during the summer of 2019 after he completed his

Associates of Arts degree at Pensacola State College. Since that date, Mr. Stevens has successfully completed 57 college credit hours, with almost all being junior and senior level engineering and programing courses. Fall semester 2019 and again in 2020, Mr. Stevens made the Dean's List for having a GPA of 3.5 to 3.89. Summer semester 2021 he made the President's list for having a GPA of 3.9 or higher. His total GPA since beginning the Computer Engineering program is 3.50. Ex. A, academic transcript (submitted directly to Court). Classmate Aaron Bading describes Mr. Stevens as a "driven" and "hard worker" who "actively engages in his daily [academic] work." Ex. B, letter from Aaron Bading. Tasked with completing group projects together, Mr. Bading credits Mr. Stevens' organization and reasoning skills with keeping them on task and insuring the project's completion in a timely manner, no matter the level of difficulty. *Id.*

Despite the instability he experienced as a child, Mr. Stevens has created a simple and stable life for himself as an adult. He maintains close relationships with his siblings and his grandparents; he spends significant time outdoors, planting and growing his own food and maintaining his grandparents' property where he lives; and he uses his computer engineering skills to provide infrastructure for node-validators and price feeds used by Flair Networks, important work necessary to build bridges between blockchain systems. PSR ¶ 134. After he serves his sentence in this case, Mr. Stevens plans to complete the remaining two semesters necessary to obtain his degree in computer engineering.

Letters from his family members share a common theme: Mr. Stevens is intelligent, dependable, and caring. Exs. C-F, letters from Conner Stevens, Sandra Stevens, Liz Stevens, and Alesia Smith. He tutors other students in mathematics, cares deeply for animals, and enjoys teaching others about science and nature. *Id.*

### b. Criminal history and offense conduct[4]

Consistent with the character described by his family, Mr. Stevens has no prior criminal history, and this Court declined to convict him of violating 18 U.S.C. § 1512(c)(2). He did not bring a weapon, helmet, or any tactical gear to the Capitol; nor did he communicate with friends and family about any expectation of violence. Mr. Stevens actions on January 6 were outside of his character, completely unanticipated, and unplanned.

### c. Punishment and deterrence

Mr. Stevens' post-arrest behavior weighs in favor of a lower sentence in this case. Arrested on February 3, 2021, Mr. Stevens has been on pretrial supervision for twenty-five months without a single violation. ECF Nos. 9, 33. This prolonged compliance shows his ability and willingness to obey the law and the orders of this Court. Mr. Stevens will successfully complete any supervision this Court imposes.

From a young age, Mr. Stevens prioritized stability and was disciplined in obtaining an education. The felony convictions associated with this case are a significant

---

[4] This Court as the trier of fact knows well the scope of Mr. Stevens' actions on January 6, 2021.

setback to his personal goals. Aside from the loss of civil liberties, Mr. Stevens will likely lose employment opportunities and future income, and he will have significant difficulty obtaining the security clearance necessary for many computer engineering positions. The collateral consequences of this conviction are significant to Mr. Stevens and serve to deter him from ever again interfering with police.

### III. Conclusion

Under U.S.S.G. § 2A2.4, Mr. Stevens' guideline range should be calculated as follows:

| | |
|---|---|
| Base offense level, § 2A2.4(a) | 10 |
| Specific offense characteristic, physical contact, § 2A2.4(b) | +3 |
| Grouping, 2 units, § 3D1.4 | +2 |
| Combined adjusted offense level | 15 |

Offense level 15 in criminal history category I produces a guideline range of 18 to 24 months' imprisonment. The 18 U.S.C. § 3553(a) factors weight in favor of a sentence below or at the low end of this range.

RESPECTFULLY SUBMITTED this 3rd day of March, 2023.

*/s/ Lauren Cobb*
LAUREN COBB
Florida Bar No. 52022
Attorney for Defendant
3 W. Garden Street, Ste. 200
Pensacola, FL 32502
(850) 432-1418
Lauren_Cobb@fd.org

10